**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 30, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EVANSTON INSURANCE
COMPANY,

　　　Plaintiff - Appellant,

v.

DESERT STATE LIFE MANAGE-
MENT; CHRISTOPHER MOYA, in his
capacity as Receiver for the receiver-
ship estate of Desert State Life Man-
agement; PAUL A. DONISTHORPE;
L. HELEN BENNETT; LIANE KERR;
AYUDANDO GUARDIANS, INC., a
New Mexico nonprofit corporation, on
behalf of seven protected persons; JO-
SEPH PEREZ; CHRISTINE
GALLEGOS, individually and as
Guardian of Victor Baldizan, an inca-
pacitated adult; SCOTT K. ATKIN-
SON, as Guardian ad Litem for Vin-
cent Esquibel, Jr., an incapacitated
person; CHARLES REYNOLDS, as
Conservator for J.W., an incapacitated
person; CAMERON GRAHAM, as
Trustee for Andrew Graham; AS-
CENDING HOPE, LLC; CNRAG,
INC.; DECADES, LLC,

　　　Defendants - Appellees.
_____

No. 21-2145

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:18-CV-00654-JB-KK)**
_____

Thomas C. Bird of Jennings Haug Keleher McLeod, Albuquerque, New Mexico (Ann Maloney Conway and Julianna T. Hopper of Jennings Haug Keleher McLeod, Albuquerque, New Mexico; Joseph J. Borders of McJessy, Ching & Thompson, Chicago, Illinois, with him on the brief) for Plaintiff-Appellant.

Maureen A. Sanders of Sanders & Westbrook, Albuquerque, New Mexico, for Defendant-Appellee L. Helen Bennett; Frank T. Davis of Harrison Hart & Davis, Albuquerque, New Mexico, for Defendants-Appellees Joseph Perez, Christine Gallegos, Scott K. Atkinson, Charles Reynolds, and Cameron Graham.

_____

Before **TYMKOVICH**, **BRISCOE**, and **PHILLIPS**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

Evanston Insurance Company appeals from a bench trial on an insurance-coverage dispute. After determining that Evanston failed to timely rescind the policy and that a policy exclusion did not apply, the district court required Evanston to continue defending Desert State Life Management against a class action arising from its former CEO's embezzlement scheme. Though we agree with the district court that rescission was untimely, we disagree about the likely application of New Mexico law on applying policy exclusions. For the following reasons, we affirm in part, reverse in part, and remand for the court to enter judgment for Evanston.

2

# BACKGROUND

## I.     Factual Background[1]

Four things underlie this appeal: Paul Donisthorpe's application for the Evanston insurance policy, his embezzlement scheme, the former clients' class action, and Evanston's response to Donisthorpe's misconduct.

Desert State Life Management was a New Mexico trust corporation that acted as a trustee for disabled individuals. From 2008 to March 2017, Donisthorpe served as its CEO. In October 2016, Donisthorpe applied for an Evanston professional-liability insurance policy on Desert State's behalf. Donisthorpe answered "no" to the following application question:

> Is the applicant [Desert State] or any principal, partner, owner, officer, director, employee, manager or managing member of the Applicant or any person(s) or organization(s) proposed for this insurance aware of any fact, circumstance, situation, incident or allegation of negligence or wrongdoing, which might afford grounds for any claim such as would fall under th[e] proposed insurance?

*Evanston*, 484 F. Supp. 3d at 1001. The application also contained the following notice:

> **NOTICE TO THE APPLICANT – PLEASE READ CAREFULLY**
> No fact, circumstance or situation indicating the probability of a claim or action for which coverage may be afforded by the proposed insurance is now known by any person(s) or entity(ies) proposed for

---

[1] These facts come mostly from the district court's order denying Evanston's motion for summary judgment and its findings of fact and conclusions of law after the bench trial. *Evanston Ins. Co. v. Desert State Life Mgmt.*, 434 F. Supp. 3d 1051 (D.N.M. 2020) (summary judgment); *Evanston Ins. Co. v. Desert State Life Mgmt.*, 484 F. Supp. 3d 987 (D.N.M. 2020) (bench trial).

this insurance other than that which is disclosed in this application. It is agreed by all concerned that if there be knowledge of any such fact, circumstance or situation, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed [insurance].

\* \* \*

This application, information submitted with this application and all previous applications and material changes thereto of which the underwriting manager, Company [Evanston] and/or affiliates thereof receives notice is on file with the underwriting manager, Company and/or affiliates thereof and is considered physically attached to and part of the policy if [issued]. The underwriting manager, Company and/or affiliates thereof will have relied upon this application and all such attachments in issuing the policy.

\* \* \*

**WARRANTY**
I/We warrant to the Company, that I/We understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy []and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy. I/We authorize the release of claim information from any prior insurer to the underwriting manager, Company and/or affiliates thereof.

*Id*. at 1001–02.

Based on Donisthorpe's application responses, Evanston issued Desert State a professional-liability insurance policy. Under the policy, "Insureds" included (1) Desert State (as the Named Insured); (2) past and present Desert State officers and directors, plus their spouses; and (3) past and present Desert State employees.

The policy's insuring agreement, "Coverage A," outlined Desert State's coverage:

4

The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5.A. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim[2] first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to the Section Claims A., Claims Reporting Provision,

By reason of:
1. A Wrongful Act;[3] or
2. A Personal Injury;

In the Performance of Specified Professional Services rendered or that should have been rendered by the Insured or by any person for whose Wrongful Act or Personal Injury the Insured is legally responsible,

Provided:
a. The entirety of such Wrongful Act(s) or Personal Injury(ies) happens during the Policy Period or on or after the applicable Retroactive Date stated in Item 5.A. of the Declarations and before the end of the Policy Period; and
b. Prior to the effective date of this Coverage Part the Insured had no knowledge of such Wrongful Act(s) or Personal Injury(ies) or any fact, circumstance, situation or incident, which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

*Id.* at 1004–05.

The policy also contained several coverage exclusions. Among them was

Exclusion P, which excluded coverage for claims "[b]ased upon or arising out

---

[2] The policy defined "Claim" to include "[a] written demand for money damages" and "service of suit." *Id.* at 1004.

[3] The policy defined "Wrongful Act" as "a negligent act, error or omission in Specified Professional Services." *Id.* "Specified Professional Services" included "Financial Case Management Services to Trust Accounts and Conservatorships." *Id.*

5

of any conversion, misappropriation, commingling [of] or defalcation of funds or property." *Evanston*, 434 F. Supp. 3d at 1066 (first alteration in original).

Despite the notices, coverages, and exclusions, Donisthorpe completed Evanston's application while running an embezzlement scheme that exposed Desert State to liability. Donisthorpe intentionally misappropriated and commingled over $4.9 million of Desert State's client funds for his own use. Donisthorpe hid his scheme by presenting fraudulent reports to Desert State's board of directors and to New Mexico regulators.

After a March 2017 investigation, regulators declared Desert State financially unsound. Also in March, L. Helen Bennett, a Desert State director, told Evanston about Donisthorpe's misconduct. Evanston also began receiving claims from Desert State clients that confirmed Bennett's report. Evanston ultimately opted not to rescind the policy; instead, it notified Desert State that it wouldn't be renewing the policy. In August, Christopher Moya was appointed Desert State's receiver.

In November 2017, Donisthorpe pleaded guilty to a two-count federal felony information charging him with wire fraud and money laundering. He was sentenced to 144 months in prison and was ordered to pay $6.8 million in restitution and a $4.8 million money judgment.

Donisthorpe's criminal case triggered demands for restitution among former Desert State clients. These former clients sued Desert State, Donisthorpe, Liane Kerr (Donisthorpe's ex-wife), Bennett, and others; the

6

clients' cases were consolidated into a class action. Their class-action complaint incorporated admissions from Donisthorpe's guilty plea and contained ten claims, including

- Claim 1: Negligence and Gross Negligence (against Desert State, Donisthorpe, and Bennett);
- Claim 2: Breach of Fiduciary Duty (against Desert State, Donisthorpe, and Bennett);
- Claim 3: Conversion (against Desert State and Donisthorpe);
- Claim 4: Violations of New Mexico Uniform Trust Code (against Desert State, Donisthorpe, and Bennett);
- Claim 5: Violations of New Mexico Unfair Practices Act (against Desert State, Donisthorpe, and others); and
- Claim 6: Violations of New Mexico Uniform Voidable Transactions Act (against Desert State, Donisthorpe, Kerr, and others).[4]

Moya asked Evanston to defend and indemnify Desert State, including against the class-action claims. As discussed below, Evanston did not respond until January 2018.

By mid-December 2017, Evanston learned that Donisthorpe had pleaded guilty. And based on statements during his plea hearing, Evanston determined that Donisthorpe had made material misrepresentations when applying for insurance on Desert State's behalf. Evanston had no evidence that any Insured besides Donisthorpe had participated in the scheme, so Evanston assumed

---

[4] Claims 7, 8, and 9 alleged professional negligence and aiding and abetting breach of fiduciary duty against Desert State's certified public accountant and the broker–dealer that held the former clients' managed investment accounts. Claim 10 alleged unjust enrichment against Kerr. These claims aren't at issue in this appeal.

7

(correctly) that no Insured other than Donisthorpe had made material misrepresentations on the insurance application.

In January 2018, Evanston sent a reservation-of-rights letter to Moya. Evanston agreed to defend Desert State against the class action but reserved all its rights, including its right to rescind the policy. The company also warned that it could deny coverage based on the Insured's knowledge of "Wrongful Acts, facts, circumstances, or incidents that would lead a reasonable person to conclude that a Claim was likely." *Evanston*, 484 F. Supp. 3d at 1013. And Evanston reserved its right to deny coverage based on policy exclusions.

In June—six months after learning of Donisthorpe's guilty plea—Evanston sent Moya a letter offering to rescind the policy. The company cited Donisthorpe's misrepresentations on Desert State's application. Evanston also refunded Desert State for the premiums paid under the policy. But Desert State did not accept the offer to rescind.

## II.    Procedural Background

In July 2018, Evanston sued Desert State, Donisthorpe, Kerr, and Bennett in the U.S. District Court for the District of New Mexico. Evanston also sued victims of Donisthorpe's scheme and former Desert State clients, given their interest in the dispute. In Count One, Evanston sought to rescind the policy. In Count Two, as an alternative to rescission, Evanston sought a declaration that Desert State, Donisthorpe, Kerr, and Bennett weren't entitled to coverage under

the policy and that Evanston had no duty to defend against claims arising from Donisthorpe's criminal conduct.

Evanston moved for summary judgment, but the case proceeded to a bench trial without a ruling on the motion. After the October 2019 trial, the district court denied summary judgment. It concluded that (1) the defendants had satisfied all conditions precedent for coverage under the policy, (2) Exclusion P did not exclude coverage for claims alleged in the class-action complaint, and (3) Evanston wasn't entitled to rescission because it failed to promptly rescind. *Evanston*, 434 F. Supp. 3d at 1120, 1124–25.[5] After the trial, the district court issued its findings of fact and conclusions of law. It concluded that (1) the policy did not insure Donisthorpe and Kerr against claims arising from the embezzlement scheme; but (2) the policy did insure Moya and Bennett for such claims, including those in the class-action complaint. *Evanston*, 484 F. Supp. 3d at 1040–45.

The district court entered final judgment by separate order, and Evanston timely appealed.

---

[5] Moya and Desert State's former clients also moved for summary judgment. Their motions were granted in part and denied in part. *See Evanston Ins. Co. v. Desert State Life Mgmt.*, No. 1:18-CV-00654-JB-KK, 2020 WL 3448253 (D.N.M. Mar. 23, 2020). In an order that overlapped with its order denying Evanston's motion, the court concluded that (1) Evanston had waited too long to rescind the policy and (2) the policy provided coverage to "innocent insureds." *Id.* at *3–4.

## STANDARD OF REVIEW

In an appeal from a bench trial, we review de novo the district court's legal conclusions. *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1183 (10th Cir. 2009) (citing *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1260 (10th Cir. 2007)). We also review de novo the district court's denial of summary judgment on a legal issue. *Kelley v. City of Albuquerque*, 542 F.3d 802, 820 (10th Cir. 2008) (citations omitted). And we review de novo the district court's interpretation of state law. *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1164 (10th Cir. 2019) (citing *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)). If the state's highest court has not decided an issue, we predict how the court would rule by "consulting persuasive state authority, such as dictum by the state's highest court and precedential decisions by a state's intermediate appellate courts." *Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724, 730–31 (10th Cir. 2020) (cleaned up).

## DISCUSSION

On appeal, Evanston argues that the district court erred by denying rescission and by concluding that the policy requires Evanston to defend Moya and Bennett against the class-action claims. It raises four issues:

1. Did the district court err by concluding that Evanston's attempted rescission was untimely?
2. Did the district court err by refusing to impute Donisthorpe's knowledge to Desert State, based on agency law's adverse-interest exception?
3. Did the district court err by concluding that Bennett satisfied the no-prior-knowledge condition in Coverage A?

10

4. Did the district court err in making its *Erie* prediction that the New Mexico Supreme Court would not enforce the unambiguous Exclusion P?

Because the first and fourth issues resolve the appeal, we consider only whether rescission and Exclusion P apply. And exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

## I.    Rescission

We begin by reviewing whether Evanston's attempted rescission was untimely. We hold that it was and affirm the district court on this issue.

Rescission is an equitable remedy that results in the cancellation of a contract. *Branch v. Chamisa Dev. Corp.*, 223 P.3d 942, 946 (N.M. Ct. App. 2009). It's available "where there has been a misrepresentation of a material fact, the misrepresentation was made to be relied on, and has in fact been relied on." *Prudential Ins. Co. of Am. v. Anaya*, 428 P.2d 640, 643 (N.M. 1967). But a party seeking to rescind "must promptly exercise it or [the] same will be waived." *Yucca Mining & Petrol. Co. v. Howard C. Phillips Oil Co.*, 365 P.2d 925, 928 (N.M. 1961); *see also Putney v. Schmidt*, 120 P. 720, 723 (N.M. 1911) ("[I]f [a party] seeks to rescind the [contract] upon the ground of fraud, he must immediately, upon discovering the fraud, restore, or offer to restore, all that he has received under the contract, as a condition precedent to his right to rescind

11

the same.").[6] To be prompt is to act "immediate[ly]." *Prompt*, *Black's Law Dictionary* (11th ed. 2019).

The district court concluded that "because Evanston Insurance did not act 'immediately' to rescind the Insurance Policy, it was not entitled to this remedy." *Evanston*, 484 F. Supp. 3d at 1016. The court noted that in other states, "insurance companies are entitled to a reasonable time to investigate before rescinding an insurance policy." *Evanston*, 2020 WL 3448253, at *3 (citing California cases). These states "represent the majority rule that, '[i]f an insurer decides to rescind a contract, it is required to act with reasonable promptness after discovery of grounds for rescission.'" *Id.* (quoting 2 Steven Plitt et al., *Couch on Insurance* § 31:98 (2019)). "By contrast," the district court reasoned, "rather than affording insurers a reasonable amount of time, New Mexico requires that those seeking rescission 'immediately, upon discovering the fraud, restore, or offer to restore' all that was received under the contract." *Id.* (quoting *Putney*, 120 P. at 723). The district court thus concluded that "the Supreme Court of New Mexico would hold that an insurance company in Evanston Insurance's position delayed too long before seeking rescission." *Id.*

---

[6] Evanston argues that we shouldn't rely on this principle from *Putney* given the case's age. But the principle that rescission must be prompt has been recognized in more recent New Mexico cases. In 2009, for example, the New Mexico Court of Appeals acknowledged this principle from *Putney*. *See Branch*, 223 P.3d at 947 (quoting *Putney*, 120 P. at 723).

Based on *Putney*'s touchstone language—which has never been overruled—we agree. The district court's factual findings belie any suggestion that Evanston acted promptly in seeking to rescind the policy. In March 2017, New Mexico regulators began investigating Desert State's finances, and by the end of the month, they declared the corporation to be financially unsound. That same month, Bennett notified Evanston about Donisthorpe's alleged misconduct. Though Evanston considered whether to rescind the policy in March, it ultimately chose only to issue a letter of nonrenewal in July, with Donisthorpe's embezzlement contributing to that decision. In August, Desert State was in receivership. Still, Evanston didn't try to rescind. In November, Donisthorpe pleaded guilty to wire fraud and money laundering. Evanston knew about this guilty plea by mid-December. Still, no rescission. In January 2018, months after Moya timely requested that Evanston defend and indemnify Desert State against the class-action claims, Evanston sent the reservation-of-rights letter. There, Evanston reserved its right to rescind the policy. Yet not until June did Evanston try to rescind. And it cited Donisthorpe's misrepresentations on the insurance application—which it knew or should've known about months earlier—as its reason for rescinding.

The concurrence describes the timing of Evanston's discovering the fraud as something about which "reasonable minds might differ" and ultimately fixes the *Putney* point of no return in December 2017, when Evanston learned of Donisthorpe's guilty plea. Concurrence at 5. In the concurrence's view,

13

Evanston's January reservation-of-rights letter bought the insurer time to investigate "whether Donisthorpe's plea gave sufficient grounds for rescission." *Id.* And citing *Agnew v. Landers*, 278 P.2d 970 (N.M. 1954), in which the New Mexico Supreme Court excused a six-month rescission delay, the concurrence finds Evanston's June 2018 rescission to be timely.

As we see it, this logical chain snaps at each link. Evanston was on notice of its right to rescind as early as March 2017, when Bennett first relayed Donisthorpe's misconduct to the insurer. Indeed, Evanston contemplated rescinding the policy then, though it stopped short and only issued a nonrenewal letter. But as the district court found, Donisthorpe's embezzlement undergirded Evanston's nonrenewal decision. *Evanston*, 484 F. Supp. 3d at 1012. It's unclear why this actual knowledge of its insured's fraud wouldn't trigger *Putney*'s immediacy requirement—or at least Evanston's need to reserve its rescission right (as the concurrence would allow).

The concurrence would hold that a "promptly issued" reservation-of-rights letter followed by a "reasonable investigation (if necessary)" is immediate enough under *Putney*. Concurrence at 2. Yet even giving effect to Evanston's reservation of rights and accepting that the letter was "promptly issued," the concurrence offers no limiting principle when the insurer completes its investigation *before* reserving its rights. Evanston began investigating Donisthorpe's misconduct back in March 2017, not when it reserved its rights in January 2018. In other words, it did not need the ensuing

14

five months to continue exploring its options. The record is silent about what Evanston did between January and June, but to us, that five-month delay looks like "meander[ing]," "dragg[ing] its feet," and "sleep[ing] on its rights." Concurrence at 3–4, 6. So the attempted rescission was still inexplicably late.

Nor does *Agnew* draw a bright line about how much delay is permissible. The *Agnew* plaintiffs faced significant obstacles in their quest to rescind a warranty deed. By the time the plaintiffs learned about the defendants' misrepresentations, the plaintiffs had left New Mexico and were "concerned with [other] affairs." *Agnew*, 278 P.2d at 67. And the plaintiffs had to wait for a third party to default on a promissory note before they could even take over the property. *Id.* The court thus concluded that these obstacles, along with the nature of the defendants' misrepresentations, excused the six-month delay:

> [T]he [defendants'] misrepresentations of fact . . . by their very nature placed plaintiffs in a position so complex and so difficult to evaluate that the time required by them to return to New Mexico, employ counsel and explore the possibilities of salvaging this transaction cannot be deemed an inordinate delay in the exercise of their right to rescission.

*Id.* We read *Agnew* to hold that circumstances outside a party's control can excuse a delayed rescission.

Here, by contrast, Evanston faced few (if any) obstacles in rescinding, especially once it learned in December 2017 that Donisthorpe had pleaded guilty. Perhaps Donisthorpe's misconduct was also "complex" and "difficult to evaluate." *Id.* But this doesn't explain the delay after Evanston sent the

15

reservation-of-rights letter—by then, Evanston had all the information it needed to rescind. *Putney*'s immediacy requirement required Evanston to promptly exercise its rights no later than when it "discover[ed] the fraud." *Putney*, 120 P. at 723. Still, Evanston did not try to rescind until June 2018, five months later. *Putney* and common sense tell us that this was too late.

Because the undisputed facts establish that Evanston waited too long to rescind the policy, we hold that the district court did not err in concluding that *Putney* effectively barred Evanston's rescission claim.[7]

## II.    Exclusion P

We turn now to Exclusion P and whether the district court erred by not applying it according to its unambiguously broad terms. We hold that the district court so erred.

In New Mexico, unambiguous contract provisions are applied, not interpreted. *Richardson v. Farmers Ins. Co.*, 811 P.2d 571, 572 (N.M. 1991) (citing *McKinney v. Davis*, 503 P.2d 332, 333 (N.M. 1972)). Though New Mexico courts generally interpret exclusionary language narrowly, they do not apply this principle "to override the clear and unambiguous terms of an exclusion." *Grisham v. Allstate Ins. Co.*, 992 P.2d 891, 894 (N.M. Ct. App. 1999) (citations omitted). Insurance clauses are ambiguous only if they are

---

[7] At oral argument, Evanston's counsel conceded that the adverse-interest exception is moot if Evanston's rescission was untimely. Because we hold that rescission was untimely, we do not reach this exception.

"reasonably and fairly susceptible of different constructions." *Knowles v. United Servs. Auto. Ass'n*, 832 P.2d 394, 396 (N.M. 1992) (quoting *Sanchez v. Herrera*, 783 P.2d 465, 469 (N.M. 1989)). The New Mexico Supreme Court has twice read "arising from" in an exclusionary clause to be unambiguous. *Lopez v. N.M. Pub. Sch. Ins. Auth.*, 870 P.2d 745, 747 (N.M. 1994); *Askew v. Miller Mut. Fire Ins. Co. of Tex.*, 522 P.2d 574, 575 (N.M. 1974).

Applying these straightforward principles of New Mexico law, Exclusion P is unambiguous. The exclusion bars coverage for any claim "[b]ased upon or arising out of any conversion, misappropriation, commingling [of] or defalcation of funds or property." *Evanston*, 434 F. Supp. 3d at 1066. The only phrase susceptible to potential ambiguity is "arising out of."[8] But as stated above, New Mexico courts provide a clear answer about that phrase's meaning: "[T]he words 'arising out of' are very broad, general and comprehensive terms, ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'" *Krieger v. Wilson Corp.*, 131 P.3d 661, 666 (N.M. Ct. App. 2005) (citing *Baca v. N.M. State Highway Dep't*, 486 P.2d 625, 628 (N.M. Ct. App. 1971)). This broad reading of "arising out of" applies equally to exclusionary clauses. *See, e.g.*, *Baca*, 486 P.2d at 628; *see also Am. Nat'l Prop. & Cas. Co. v. United Specialty Ins. Co.*, 592 F. App'x 730, 742

---

[8] The parties do not discuss whether Exclusion P's other phrasal verb, "based upon," applies here. Because we need not define "based upon" to reach our conclusion, we express no opinion on its plain meaning.

(10th Cir. 2014) (unpublished) ("[W]e have every reason to suppose that New Mexico law applies the same broad definition of 'arising out of' in the exclusion context as in the coverage context.").

True, the New Mexico Supreme Court has not weighed in on that phrase's precise meaning. But we expect that the New Mexico Supreme Court would adopt the meaning uniformly used by the New Mexico Court of Appeals. *E.g.*, *Krieger*, 131 P.3d at 666; *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 213 P.3d 1146, 1153 (N.M. Ct. App. 2009). Indeed, we have noted the same when sitting in diversity and applying New Mexico law. *See Am. Nat'l Prop. & Cas. Co.*, 592 F. App'x at 741 (remarking that under New Mexico law, "'arising out of' is not facially ambiguous just because it appears in an exclusion"). We conclude that Exclusion P is unambiguous.

Because the unambiguous plain language controls, we apply Exclusion P as written. *Richardson*, 811 P.2d at 572. Here, the class-action negligence claims arose out of Donisthorpe's commingling. "In determining the applicability of [an] exclusion, [the] focus must be on the *origin* of the damages, *not* the *legal theory* asserted for recovery." *Lopez*, 870 P.2d at 747 (citations omitted). Within their negligence claims, the class-action plaintiffs incorporate allegations that track the admissions from Donisthorpe's guilty plea. They allege that Desert State and Bennett mismanaged client accounts and failed to monitor the company's financial health, in turn causing the former clients to suffer financial damage. And they accuse Bennett of "exercis[ing]

18

little to no oversight of" Donisthorpe. App. vol. 1, at 76. The legal theory undergirding the class-action claims is Bennett's alleged negligence, but the origin of the damages arises out of Donisthorpe's commingling. In other words, the claims "originate from, have their origin in, grow out of, [or else] flow from" Donisthorpe's misconduct. *Krieger*, 131 P.3d at 666 (cleaned up). Exclusion P must apply, excluding coverage for the class-action negligence claims against Moya and Bennett.

In concluding otherwise, the district court exceeded its authority by looking beyond Exclusion P's text. It began by correctly finding Exclusion P unambiguous. This conclusion should have ended the court's analysis, and it should have applied the exclusion as written. Yet it pressed on, noting that New Mexico courts hadn't specifically addressed whether exclusions like Exclusion P "reach[] the type of negligence which [Desert State's former] clients have alleged" in the class-action complaint. *Evanston*, 434 F. Supp. 3d at 1105. It proceeded to survey how courts in other jurisdictions had approached the question. A clear majority view emerged: Similarly drafted provisions exclude coverage for negligence claims arising out of intentional misconduct, even if the negligent individuals did not commit that misconduct. The minority approach, adopted by only New York and Pennsylvania, provides that "negligence claims against insureds do not necessarily 'arise out of' other insureds' related and excluded acts." *Id.* at 1112 (citation omitted).

19

In predicting that the New Mexico Supreme Court would join the minority, the district court cited the principle that policy exclusions are generally read narrowly. It relied on four cases—each involving ambiguities—to conclude that New Mexico wouldn't read Exclusion P "broadly to cover claims that Evanston Insurance could have foreseen and could have expressly disclaimed." *Id.* (citing *Rummel v. Lexington Ins. Co.*, 945 P.2d 970 (N.M. 1997); *United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644 (N.M. 2012); *King v. Travelers Ins. Co.*, 505 P.2d 1226 (N.M. 1973); and *Knowles*, 832 P.2d 394). And the court faulted Evanston for writing "stronger exclusionary clauses in other insurance contracts," which proved that Evanston could "clarify the issue, if [it] wanted, with the stroke of a pen." *Id.* at 1112 & n.42 (citing *Thames v. Evanston Ins. Co.*, No. 13-CV-425-PJC, 2015 WL 7272214 (N.D. Okla. Nov. 17, 2015)).[9]

---

[9] That Evanston has drafted a different exclusionary clause does not show that the Desert State clause is somehow deficient. *See O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 290 (Del. 2001) ("The fact that Progressive chose to make a clear policy provision [clearer] as a remedial measure to this litigation may not be used as evidence of an admission of either ambiguity or acceptance of Appellants' interpretation of the policy."); *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1341 (9th Cir. 1989) ("We reject the Tzungs' reliance on the revised policy for its negative inferences. Not only do we believe that accepting such an argument would discourage remedial action and thereby violate public policy, but we also believe that even though the revised policy excludes *all* forms of third-party negligence[,] it does not mean that the former policy does not exclude some forms of third-party negligence . . . ." (citation and footnote omitted)).

The district court made four mistakes by choosing this course. First, the four cases on which the court relied involved ambiguous contract terms. Unlike for unambiguous terms (like in Exclusion P), which courts apply without interpreting, *Richardson*, 811 P.2d at 572, courts "construe ambiguous language and . . . give it sensible construction." *State v. Johnson*, 954 P.2d 79, 85 (N.M. Ct. App. 1997) (citations omitted). Because those four cases applied the distinct analytical framework for ambiguous terms, the district court erred in basing its *Erie* prediction on them. Second, the court applied the narrow-construction principle "to override the clear and unambiguous terms of an exclusion"— exactly what *Grisham* instructs New Mexico courts not to do. 992 P.2d at 894 (citations omitted). Third, the court also cited *Baca* and *American National Property & Casualty Co.*, yet seemingly neglected both when predicting that the New Mexico Supreme Court would narrowly read Exclusion P. Finally, though the court recognized that Exclusion P was unambiguous and "arising out of" was broad, it abandoned Exclusion P's plain language by refusing to apply it as written.

We predict that, consistent with the majority view, the New Mexico Supreme Court would construe Exclusion P as applying to the class-action

negligence claims. Thus, Evanston does not have a duty to defend Moya and Bennett under the policy.[10]

## CONCLUSION

On rescission, we affirm the district court. But we reverse the district court's ruling on Exclusion P and remand the case with instructions to enter judgment for Evanston and against Moya and Bennett.

---

[10] Because we conclude that Exclusion P applies, we do not address whether the no-prior-knowledge condition also precludes coverage for Moya and Bennett.

21-2145, *Evanston Insurance Company v. Desert State Life Management, et al.*

**TYMKOVICH**, Circuit Judge, concurring.

I am pleased to join the bulk of the majority opinion. But I would conclude that Evanston properly rescinded the insurance contract after timely notice and investigation of the underlying facts and circumstances.

The district court held that Evanston waited too long to rescind its insurance policy. The court relied on *Putney v. Schmidt*, where the New Mexico Supreme Court held that a party seeking contract rescission must "immediately, upon discovering the fraud," return whatever it received under the contract. 120 P. 720, 723 (N.M. 1911). If a party fails to act immediately, it affirms the contract despite the fraud. *Id.* Since Evanston waited six months after learning of Donisthorpe's fraud to return Desert State's insurance premium and rescind the insurance policy, the district court found it flunked the immediacy requirement.

But importantly, Evanston also sent Desert State a "reservation of rights" letter shortly after discovering evidence of the fraud in late 2017. In a letter dated January 5, 2018, Evanston stated,

> After careful consideration, Evanston has agreed to provide
> you a defense for claims asserted against you in the lawsuits
> filed by DSLM's clients, under a full and complete
> reservation of rights . . . It appears from the Plea Agreement
> that Mr. Donisthorpe knew of facts, situations or incidents
> that might afford grounds for a claim against DSLM at the
> time he applied for the insurance on behalf of DSLM. *Based
> on these admissions, his responses on the application
> constitute material misrepresentations that could provide
> grounds to rescind the Policy entirely. Evanston will
> continue to investigate this matter, as indicated above, under*

> *a full and complete reservation of rights.* Evanston reserves
> all rights, terms and conditions of the Policy referred to above
> including, but not limited to, the right to deny coverage based
> upon the Policy provisions quoted above or seek rescission of
> the Policy based on fraud or material misrepresentation.

Evanston's Reservation of Rights, *Evanston Ins. Co. v. Desert State Life Mgmt.*, No. 1:18-cv-00654-JB-KK (D.N.M.), ECF # 106-1 at 1–12 (filed Aug. 9, 2019) (emphasis supplied). Evanston maintains this was enough to satisfy the immediacy requirement, but the district court did not address the argument. New Mexico courts have not addressed it either.

In my view, a reservation of rights letter promptly issued and followed by a reasonable investigation (if necessary) satisfies the immediacy requirement. The investigation must last no longer than necessary to establish a firm basis for rescission. If the investigating party needlessly stretches its investigation, it would fail the immediacy requirement.

In New Mexico, a "[m]isrepresentation of a material fact, even if innocently made, will entitle the party who has justifiably relied thereon to rescind the contract." *Ledbetter v. Webb*, 711 P.2d 874, 877 (N.M. 1985). But when a party discovers the fraud, it must "immediately" restore the value received (here, the insurance premium) to preserve the right to rescind. *Putney*, 120 P. at 720. If it does not act immediately and "play[s] fast and loose," New Mexico law treats its behavior as affirming the contract instead. *Reed v. Rogers*, 141 P. 611, 613 (N.M. 1914) (quoting *Grymes v. Sanders*, 93 U.S. 55, 62 (1876)).

2

The term "immediately," however, does not accurately describe what the requirement demands. The New Mexico Supreme Court applies *Putney*'s "immediacy" requirement in a fact-sensitive manner. For example, the Supreme Court found a six-month delay between a party's discovery of fraud and its rescission attempt sufficiently immediate. The court recognized that the party needed to "employ counsel and explore the possibilities of salvaging this transaction," and noted the party was "in a position . . . complex and difficult to evaluate." *Agnew v. Landers*, 278 P.2d 970, 978 (N.M. 1954).

I see one primary justification for the immediacy requirement: the doctrine encourages prompt investigation and resolution of conflicts arising from contract fraud. Put differently, it vindicates the principle that "[t]he law will not permit a party to sit idly by and await the results which, if favorable, he will receive the benefit of, but if unfavorable, ask rescission." *Yucca Min. & Petroleum Co. v. Howard C. Phillips Oil Co.*, 365 P.2d 925, 928 (N.M. 1961). When a party sleeps on its rights, the immediacy requirement takes them away.

The common law of various other states also establishes an immediacy requirement, or something close to it. Courts in these states also treat the requirement as fact sensitive. *See, e.g.*, *Danto v. Charles C. Robbins, Inc.*, 230 N.W. 188, 190 (Mich. 1930) ("[A] person claiming to be defrauded must elect to rescind, or not, immediately after he discovers the fraud. By waiting more than a reasonable length of time after he discovers the fraud, he condones it."); *Long v. Int'l Vending Mach. Co.*, 139 S.W. 819, 820 (Mo. Ct. App. 1911) (the immediacy requirement allows for "a reasonable time . . . to do the things necessary in order to rescind"); *Cont'l Cas. Co. v. Marshall Granger &*

3

*Co.*, 6 F. Supp. 3d 380, 394 (S.D.N.Y. 2014) ("An insurer need not, however, make a rushed and uninformed decision; it is entitled to a reasonable period of time in which to investigate the potential basis for rescission.").

In my view, a timely reservation of rights letter paired with a prompt investigation satisfies the immediacy requirement under New Mexico law. It encourages prompt investigation and resolution of contract fraud, and it punishes those who sleep on their rights. It follows that the requirement should reward a reservation of rights: such notice invites the scrutinized party into the process of resolving a simmering dispute and brings the conflict—and perhaps other relevant facts—to the surface.

The immediacy requirement also necessarily mitigates potential prejudice to the party suspected of fraud. By requiring a prompt investigation, the requirement makes it more likely that exonerating facts will be brought to the surface, either by the investigating party or the suspected party. And it prevents the suspected party from falling into a false sense of security. *See, e.g.*, *Illinois State Bar Ass'n Mut. Ins. Co. v. Corgeis Ins. Co.*, 821 N.E.2d 706, 717–18 (Ill. App. Ct. 2004) ("As stated above, the right of rescission must be exercised promptly . . . This reservation-of-rights letter made [the insured] aware . . . that [the insurer] was not waiving anything.") (internal citations and quotations omitted).

Of course, a reservation of rights is not a blank check for the investigating party to meander. Nor will a late-arriving reservation of rights letter do the trick. Finding otherwise would cut against the goal of swiftly resolving fraud disputes and preventing the suspected party from falling into a false sense of security. That is why the reservation

4

must be issued quickly and the subsequent investigation must last no longer than necessary. And in keeping with common law developments, "quickly" and "no longer than necessary" must be interpreted with an eye to the relevant facts of each case. These facts include, but are not limited to, the complexity of the underlying fraud, external circumstances bearing on the investigation's timeliness, and a showing of prejudice due to the delay by the party suspected of fraud.

Based on the record in this case, I have little trouble concluding Evanston satisfied the immediacy requirement.

According to the district court, the Desert State clients offered as an undisputed material fact (and Evanston did not object) that Evanston concluded Donisthorpe made material misrepresentations on the applications when it discovered Donisthorpe's guilty plea. Summary Judgment Order, *Evanston Insurance Co. v. Desert State Life Mgmt.*, No. 1:18-cv-00654-JB-KK (D.N.M.), ECF # 180 at 5 (filed Mar. 23, 2020). While I recognize that reasonable minds might differ on when Evanston "discovered the fraud," I read the district court's order to find that Evanston "discovered the fraud" in early December and accept that finding.

From there, I have little trouble concluding that Evanston satisfied the requirement. The immediacy requirement was triggered in early December. Evanston issued its reservation of rights about one month later and began to investigate whether Donisthorpe's plea gave sufficient grounds for rescission. And about five months after tolling the requirement, it rescinded. Like the New Mexico Supreme Court, I find that

5

length of time unremarkable. *See Agnew*, 278 P.2d at 978 (finding that a six-month delay between a party's discovery of fraud and its rescission passed the immediacy requirement).

Here, the facts do not suggest that Evanston dragged its feet and there is no showing of prejudice from the investigation. I therefore would have accepted Evanston's rescission of the insurance contract.