**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 17, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STEPHANIE MAZUR; JULIA WUNDER,

    Plaintiffs/Counter-Defendants -
Appellants,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

    Defendant/Counterclaimant -
Appellee.

No. 25-1133
(D.C. No. 1:23-CV-02618-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

This diversity case involves a dispute under Colorado law regarding uninsured

motorist coverage in an automobile insurance policy.

Plaintiffs/Counter-Defendants–Appellants Stephanie Mazur and Julia Wunder

(collectively, "Plaintiffs"), were injured when Ms. Mazur, driving a vehicle owned by

Ms. Wunder's parents and insured by Defendant/Counterclaimant–Appellee State

Farm Mutual Automobile Insurance Company ("State Farm"), swerved to avoid

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

hitting a pedestrian in the left travel lane of the interstate at night, causing the vehicle to roll over several times. Plaintiffs later learned that the pedestrian, an elderly man named William Westuk, had been the passenger in an uninsured vehicle that had broken down on the other side of the interstate three hours before Plaintiffs' accident occurred. The driver of the uninsured vehicle, Richard Fralick, had instructed Mr. Westuk to stay in the car while Mr. Fralick attempted to flag down another car for help. However, without Mr. Fralick's knowledge and against his advice, Mr. Westuk left the vehicle and made his way across the median to seek help from drivers on the other side of the interstate, ending up in the travel lane of the interstate shortly before Plaintiffs encountered him in their vehicle.

Plaintiffs sought insurance coverage from State Farm under the uninsured motorist provision of the insurance policy. Plaintiffs claimed that they were entitled to uninsured motorist coverage because their injuries stemmed from Mr. Fralick's negligent maintenance and operation of his uninsured vehicle, which set into motion the chain of events triggering Plaintiffs' rollover crash. State Farm denied coverage. Plaintiffs then filed this lawsuit.

The district court granted summary judgment in favor of State Farm, holding that Plaintiffs were not entitled to uninsured motorist coverage under Colorado law. We affirm.

## I.    BACKGROUND[1]

On April 13, 2021, at approximately 9:30 p.m., Mr. Fralick was driving his newly acquired used Subaru northbound on Interstate 25 in a remote part of New Mexico, with Mr. Westuk riding as his passenger. In this area of Interstate 25, the northbound and southbound lanes are separated by a median that is approximately 300 feet wide.

The Subaru broke down as Mr. Fralick was approaching New Mexico mile marker 123, and Mr. Fralick guided the vehicle into an emergency crossover between the northbound and southbound lanes. The Subaru came to a stop in the crossover near the northbound lanes.

Mr. Fralick and Mr. Westuk were unable to restart the Subaru. And neither man had cellphone service in this remote area of New Mexico. Mr. Fralick accordingly tried to flag down passing motorists for help. He told Mr. Westuk to remain in the Subaru because Mr. Westuk was elderly and had difficulty walking without the assistance of a cane or other mobility aid.

"After about three hours during which [Mr.] Fralick was unable to restart the Subaru or obtain assistance, and without [Mr.] Fralick's knowledge . . . ,

---

[1] The facts in this background section are primarily drawn from the parties' joint Stipulations for Summary Judgment Briefing. We do not consider Plaintiffs' factual allegations that are supported with only citations to their own pleadings. *See Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings." (quotation marks omitted)); *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1268 (10th Cir. 1998) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." (quotation marks omitted)).

3

[Mr.] Westuk exited the Subaru, walked across the crossover, and tried to flag down passing motorists in the southbound lanes of Interstate 25." App. Vol. I at 230–31. "At or around 12:38 a.m. on April 14, 2021, [Mr.] Westuk made his way into the far left southbound lane of Interstate 25, and it has been variously reported that he was either standing or sat or fell down in that lane of travel." *Id.* at 231.

At around that same time, Ms. Mazur was driving a 1999 Toyota Land Cruiser southbound on Interstate 25, with Ms. Wunder riding in the passenger seat. When they came across Mr. Westuk "walking, standing, or sitting in the left lane in the darkness," Ms. Mazur swerved to avoid hitting him, causing her to lose control of the Land Cruiser. *Id.* As a result, the Land Cruiser rolled over several times, injuring Plaintiffs.

The Land Cruiser was owned and insured by Ms. Wunder's parents, Thomas and Melinda Wunder ("the Wunders"). The Wunders had an insurance policy issued by State Farm, which included uninsured motorist coverage. The uninsured motorist provision provided in pertinent part:

> [State Farm] will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle. The bodily injury must be:
>
> 1. sustained by an insured; and
>
> 2. caused by an accident that involves the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle.

*Id.* at 228 (alteration in original).

Plaintiffs each submitted uninsured motorist claims to State Farm, alleging "that their injuries arose out of [Mr.] Fralick's negligent operation, maintenance, and use of the Subaru." *Id.* at 231. State Farm denied these claims in writing.

After State Farm denied their claims, Plaintiffs filed this lawsuit in the Colorado state court, raising claims of breach of contract and bad faith.

Invoking federal diversity jurisdiction, State Farm removed the matter to the district court. *See* 28 U.S.C. §§ 1332(a)(1), 1441. State Farm then filed a counterclaim seeking a declaratory judgment that it had no obligation to cover Plaintiffs' injuries under the policy's uninsured motorist provision.

The parties agreed to limit their initial discovery "to the issues of whether the subject accident arose out of the operation, maintenance, or use of [Mr.] Fralick's vehicle, as well as liability for Plaintiffs' injuries." App. Vol. I at 195. After conducting this limited discovery, they agreed on a set of stipulations to be used for this phase of their summary judgment briefing. Among other things, they stipulated solely for purposes of summary judgment that (1) Ms. Mazur and Ms. Wunder both qualified as insureds under the Wunders' policy, (2) Mr. Fralick had purchased the Subaru approximately one week before the accident and did not have insurance coverage; and (3) the Subaru broke down "[a]s a result of [Mr.] Fralick's negligence." *Id.* at 229. The parties' stipulations did not define what action or actions Mr. Fralick took or failed to take that were negligent.

The parties filed competing motions for summary judgment on the coverage issue. The district court concluded that Plaintiffs were not entitled to coverage under

the policy's uninsured motorist provision based on the Colorado Supreme Court's decision in *State Farm Mutual Automobile Insurance Co. v. Kastner*, 77 P.3d 1256 (Colo. 2003). The district court accordingly entered summary judgment in favor of State Farm and against Plaintiffs on all claims and counterclaims. Plaintiffs then filed this timely appeal.

Exercising appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

## II.     DISCUSSION

### A.     *Standard of Review*

"We review the district court's grant of summary judgment de novo, applying the same legal standards used by the district court." *Ross v. Bd. of Regents of Univ. of N.M.*, 599 F.3d 1114, 1116 (10th Cir. 2010) (quotation marks omitted). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

"When exercising diversity jurisdiction, we apply state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). To achieve this objective, we "must look to rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Dyno Nobel v. Steadfast Ins. Co.*, 85 F.4th 1018, 1025 (10th Cir. 2023) (quotation marks omitted). "[W]e predict how the court would rule by consulting persuasive state authority, such as dictum by the state's highest court and precedential decisions by a state's intermediate appellate courts." *Evanston Ins. Co. v. Desert State Life Mgmt.*, 56 F.4th 899, 905 (10th Cir. 2022)

6

(internal quotation marks omitted). "In performing this ventriloquial function, however, [we are] bound by ordinary principles of *stare decisis*." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). Accordingly, "when a panel of this [c]ourt has rendered a decision interpreting state law, that interpretation is binding . . . on subsequent panels of this [c]ourt, unless an intervening decision of the state's highest court has resolved the issue." *Id.*

## B.    *Substantive Legal Standard*

The parties agree that Colorado law governs issues of policy interpretation in this diversity case.

At the time of Plaintiffs' accident, Colorado's Uninsured Motorist Act provided in pertinent part that when an insurance company issues a policy "insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle," it must also offer coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." Colo. Rev. Stat. § 10-4-609(1)(a) (2011).

Under Colorado law, "[a]n insurance policy is a contract between the insured and the insurer," and it should therefore generally "be interpreted according to settled principles of contract law." *Kastner*, 77 P.3d at 1259. However, policy provisions that "are express attempts to conform to statutory requirements," like uninsured motorist

provisions, must be interpreted to "reflect the overall legislative purpose" of that statute. *Id.* at 1260.

In *Kastner*, the plaintiff sought insurance coverage for injuries she sustained when an unknown assailant carjacked her, drove her in her own vehicle to a wooded park, and sexually assaulted her. *Id.* at 1258–59. Specifically, the assailant pulled a knife on the plaintiff as she was opening her car door in a crowded shopping mall parking lot, then forced her to sit in the front passenger seat of the car, recline the seat, and get down as far as possible to stay out of view. *Id.* When they arrived at the park, the plaintiff opened the passenger door to attempt to escape, but she was held in by her automatic seatbelts. *Id.* at 1259. The assailant sexually assaulted her while she sat in the passenger seat of the car, then drove her to a liquor store parking lot, got out of the car, and walked away. *Id.*

The plaintiff sought coverage for her injuries under two provisions of her automobile insurance policy: "a Personal Injury Protection (PIP) policy that was consistent with the Colorado Auto Accident Reparations Act (the 'No Fault Act')," and "uninsured/underinsured (UM) motorist coverage pursuant to the Colorado Uninsured Motorist Act." *Id.* The insurance company denied coverage under both provisions. *Id.*

The state trial court granted summary judgment in favor of the plaintiff, holding that there was a causal connection between her vehicle and the assault because the assailant selected the plaintiff as a victim when she opened her vehicle door, used the reclining passenger seat to prevent her from signaling for help, used

8

the vehicle to travel to an isolated area, and used the automatic seatbelts as restraints to further the assault. *Id.* The state appellate court affirmed this decision, but the Colorado Supreme Court reversed. *Id.* at 1258–59.

In reaching its decision, the Colorado Supreme Court explained that "the legislative intent underlying" Colorado's Uninsured Motorist Act is "to provide compensation for injury caused by an uninsured motorist equal to that obtainable for injury caused by an insured motorist." *Id.* at 1260 (quoting *State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 168 (Colo. 1993)). To carry out this legislative intent, *Kastner* held, Colorado courts will require an insurance company to compensate an insured for an injury caused by an uninsured motorist only if (1) the injury arose out of the "use" of a motor vehicle in a manner consistent with its inherent purpose, and (2) this "use" of the vehicle was causally connected to the claimant's injury, meaning that the use and the injury were "directly related or inextricably linked so that no independent significant act or non-use of the vehicle interrupted the 'but for' causal chain between the covered use of the vehicle and the injury." *Id.* at 1264. If the claimant fails to satisfy either one of these requirements for coverage, then the insurance company will not be required to compensate the insured for the injury. *See id.* at 1261–66.

### 1.    Applicability of *Kastner*

As an initial matter, we consider Plaintiffs' arguments for distinguishing or limiting *Kastner*. First, Plaintiffs argue that *Kastner*'s two-part test applies only to

9

injuries caused by criminal conduct, like the sexual assault at issue there. We are unpersuaded by this argument.

In *Kastner*, the Colorado Supreme Court did not limit its reasoning to injuries caused by criminal conduct. And the court derived its two-part test from its review of several prior Colorado cases, including cases that did not involve criminal conduct or intentionally inflicted injuries. *See, e.g.*, *Kastner*, 77 P.3d at 1262–64 (referring repeatedly to a case in which a cement truck driver was injured when the hose being used to pump cement to the top of a building knocked a brick onto his head (citing *Titan Constr. Co. v. Nolf*, 515 P.2d 1123 (Colo. 1973))). The court's analysis in *Kastner* reflects its attempt to synthesize prior precedents to derive a universal test for uninsured motorist coverage. Nothing in the court's reasoning suggests that this test would be limited to claims arising from criminal conduct or intentional torts. *See id.* Indeed, the dissent in *Kastner* broadly described the two-prong test as "[t]he majority's attempt to synthesize" Colorado's "accident recovery cases," *id.* at 1267 (Bender, J., dissenting), and the majority never disagreed with this characterization or suggested that its holding was more limited in scope.

Tellingly, Plaintiffs do not cite any Colorado or Tenth Circuit cases limiting *Kastner*'s applicability to the context of criminal conduct or intentional torts. Nor do they cite any post-*Kastner* cases in which a court applying Colorado law used a different test to determine whether a claimed injury fell within the scope of an uninsured motorist provision. And even if we were to accept Plaintiffs' argument that *Kastner*'s broad discussion of its two-prong test is dicta outside of the context of criminal acts, our

assessment of state law requires us to consider "persuasive state authority, such as dictum by the state's highest court." *Evanston Ins.*, 56 F.4th at 905.

Next, Plaintiffs suggest that *Kastner* should be distinguished or disregarded based on Colorado's "strong public policy in favor of protecting tort victims," which "is a fundamental purpose of insurance coverage." *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 646 (Colo. 2005). Plaintiffs argue that denying coverage for their injuries would violate this public policy, and they therefore suggest that *Kastner* does not apply and should be disregarded in favor of *Friedland*'s general public policy pronouncement.

However, in cases arising under diversity jurisdiction, we "must look to rulings of the highest state court." *Dyno Nobel*, 85 F.4th at 1025. And in *Kastner*, the Colorado Supreme Court specifically held that an insurer will not be required to provide uninsured motorist coverage for injuries that do not arise out of a contemplated "use" of a vehicle and are not directly related or inextricably linked to that "use." 77 P.3d at 1262–65. Thus, as State Farm persuasively argues, *Kastner*'s "two-part test already implements the [Uninsured Motorist Act's] public policy goals." Appellee's Br. at 27. *Kastner*'s specific holding on this point cannot be disregarded based on general public policy principles.

Finally, Plaintiffs argue in their reply brief that the *Kastner* test does not cover all possible types of uninsured motorist claims because *Kastner* focused only on the "use" of a vehicle, while the state statute suggests that coverage may be available for injuries "arising out of the ownership, maintenance, or use of a motor vehicle." Colo. Stat. Rev. § 10-4-609(1)(a) (2011). Even assuming this argument was not forfeited by Plaintiffs'

11

failure to raise it in their opening brief, *see Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007), it does not provide us with a valid reason to disregard or alter the two-prong test set forth by the Colorado Supreme Court in *Kastner*.

Like the policy at issue in this case, the policy in *Kastner* expressly provided that a covered injury "must be caused by an accident *arising out of the operation, maintenance or use of an uninsured motor vehicle.*"[2] *Kastner*, 77 P.3d at 1259 (emphasis in original). Despite this language, however, *Kastner* framed its test only in terms of "use," holding that "the claimant must show that at the time of the 'accident,' the vehicle was being 'used' in a manner 'contemplated by the policy in question.'" *Id.* at 1261 (footnote omitted) (quoting *Mason v. Celina Mut. Ins. Co.*, 423 P.2d 24, 25 (Colo. 1967)). And *Kastner* cited approvingly to cases from other states "[r]equiring that at the time of the accident the vehicle was being used as a mode of transportation." *Id.* at 1263. *Kastner* specifically quoted a passage from one of those cases in which the court held: "Basic automobile insurance policies are intended to cover 'driving' the vehicle, not repairing it. This additional field of coverage should be provided for by appropriate policies intended for that particular purpose." *Id.* (quoting *Com. Union Assurance Cos. v. Howard*, 637 S.W.2d 647, 649 (Ky. 1982)).

Moreover, even if we were to interpret *Kastner* to require coverage not only for injuries arising out of the use of a vehicle but also injuries arising out of the vehicle's

---

[2] Although *Kastner* was interpreting an earlier version of the Uninsured Motorist Act, the pertinent statutory language contained the same wording regarding "ownership, maintenance, or use of a motor vehicle." Colo. Rev. Stat. § 10-4-609(1)(a) (1995).

ownership or maintenance, Plaintiffs cite no persuasive reason why the test for ownership or maintenance would not require a claimant to satisfy the second prong of the *Kastner* test, which requires the claimant to show causation. And for the same reasons discussed below with respect to the use of a vehicle, we conclude that Plaintiffs have not shown that Mr. Fralick's ownership or maintenance of his Subaru meets *Kastner*'s demanding causation standard.

Having concluded that *Kastner* governs our analysis of the issue before us in this appeal, we briefly explain what the *Kastner* test entails, then describe the district court's application of this test to Plaintiffs' claims and finally, conduct our own analysis of this issue.

## 2.    *Kastner* Test

In *Kastner*, the Colorado Supreme Court explained that the first prong of its test requires an insurance claimant to "show that at the time of the 'accident,' the vehicle was being 'used' in a manner 'contemplated by the policy in question.'"[3] *Id.* at 1261 (footnote omitted) (quoting *Mason*, 423 P.2d at 25). The court then held that the only "use" of a non-commercial passenger vehicle that is generally contemplated by the parties to an insurance policy "is use as a mode of transportation." *Id.* at 1262.

---

[3] In a footnote, the court explained that "if the claim is made pursuant to the policy's [uninsured motorist] provision, the focus is on the use of the uninsured vehicle," whereas a claim brought under the policy's personal injury protection provision requires the court to evaluate "the use of the insured vehicle." *State Farm Mut. Ins. Co. v. Kastner*, 77 P.3d 1256, 1261 n.2 (Colo. 2003).

13

Next, *Kastner* held that the second prong of the uninsured motorist test asks "whether the 'use' is causally related to the claimant's injury." *Id.* at 1263. The court explained that this causal element requires "something more than a mere 'but for' relation between the use of the vehicle and the injury," but "something less than proximate cause in the tort sense." *Id.* In other words, even if "the accident would not have occurred *but for* the vehicle's use," the "'but for' doctrine should not apply when there is a lack of relationship between the vehicle and the accident." *Id.* (emphasis in original) (brackets omitted) (quoting *Kohl v. Union Ins. Co.*, 731 P.2d 134, 135–36 (Colo. 1986)). The causation prong of the test thus "requir[es] not only a 'but for' connection between the 'use' of the vehicle and the claimant's injury, but also an unbroken causal chain between that use and the injury." *Id.* at 1264.

Accordingly, "[u]nder this framework, the claimant must first show that except for the use of the vehicle, the accident or incident in question would never have taken place." *Id.* "In addition, to complete and satisfy the causal analysis, the claimant must show that the 'use' of the vehicle and the injury are directly related or inextricably linked so that no independent significant act or non-use of the vehicle interrupted the 'but for' causal chain between the covered use of the vehicle and the injury." *Id.*

The Colorado Supreme Court further explained that "[w]here the injury in question suffered by the insured is actually the result of an intentional act of another," the causation "showing can be particularly difficult to make." *Id.* However, even if the immediate cause of the injury is the intentional act of another, "the claimant may recover provided that the injury flows directly from the 'use' of the vehicle, without interruption,

so that the 'use' of the vehicle and the resulting injury constitute 'one ongoing assault.'"
*Id.* at 1265.

### 3.    District Court Decision

The district court concluded that Plaintiffs could not satisfy either prong of the
*Kastner* test.

On the first prong, the court held that Mr. Westuk's action of traveling on foot
to the southbound travel lanes of the interstate was not a contemplated "use" of a
motor vehicle. The court explained that Mr. Fralick's uninsured vehicle "had been
driven to an area of safety in the emergency crossover between the northbound and
southbound lanes." App. Vol. II at 486. "Mr. Westuk then left this area of safety, in
the middle of the night, to try to flag down assistance from southbound motorists
traveling at . . . high rates of speed . . . , and was struck while either standing or
sitting (perhaps having fallen down) in the southbound lane of travel." *Id.* at 486–87.
And the court reasoned that "[s]uch actions are simply not contemplated by the
parties to the Policy but are, instead, foreign to the inherent purpose of the
[vehicle]."[4] *Id.* at 487. The court therefore held that "Plaintiffs' claims fail the first
prong of the use test." *Id.*

In a footnote, the district court noted that *Kastner*'s first prong is "routinely"
applied by "look[ing] to the use of the vehicle at the specific time of the incident or

---

[4] The district court specifically referred here to the Land Cruiser rather than
the Subaru, but its analysis makes clear that it correctly focused on "the use of the
uninsured vehicle" as directed by *Kastner*, 77 P.3d at 1261 n.2, despite this
misstatement.

accident." *Id.* at 487 n.6. But the court noted that "[t]he problem with this approach[] . . . is that it arguably collapses the two prongs into one," as the court could not "imagine a situation where the vehicle was being used as a vehicle's intended purpose at the exact time of the incident giving rise to the injury, but yet a significant act of non-use interrupted the chain (thereby failing the second prong)." *Id.* The court then explained that if it were to interpret the "use" prong in a broader way than Colorado courts typically interpret this prong—"for example, to state that the vehicle was being used as a vehicle because it was broken down on the Interstate and such break downs are anticipated"—it would hold that Plaintiffs were not entitled to coverage under the causation prong. *Id.* On this point, the district court reasoned that "Mr. Westuk's significant independent actions of leaving his vehicle and walking into the southbound lane of Interstate 25 interrupted the causal chain between the covered use of the vehicle and the injury," and thus *Kastner*'s causation prong would not be satisfied even if the court accepted Plaintiffs' argument that the Subaru was in use as a vehicle at the time of the accident. *Id.*

### C.    Analysis

Like the district court, this court has observed that "there is some potential confusion regarding the parameters of *Kastner*'s 'use' prong," particularly relating to the possible contemporaneity requirement. *State Farm Mut. Auto. Ins. Co. v. Fisher*, 618 F.3d 1103, 1108 (10th Cir. 2010). As in *Fisher*, however, "we need not resolve any potential confusion which relates to *Kastner*'s first prong." *Id.* Rather, we assume without deciding that Plaintiffs' accident arose out of Mr. Fralick's "use" of an uninsured vehicle

as a means of transportation. *See id.* Turning then to the causation prong, we conclude that any "use" of the uninsured Subaru was not "directly related or inextricably linked" to Plaintiffs' injuries under *Kastner*, 77 P.3d at 1264. We therefore affirm the district court's decision based on *Kastner*'s causation prong.

Plaintiffs' main argument on the causation prong is based on a foreseeability analysis. Plaintiffs contend that "because [Mr.] Westuk's actions were entirely foreseeable for purposes of Colorado law . . . , they cannot serve to break the causal chain as posited by the district court." Appellants' Br. at 34. According to Plaintiffs, it is foreseeable that (1) vehicles will break down, (2) the occupants of those vehicles may go looking for help, and (3) they may cause a car accident when they do. Plaintiffs thus argue that "[Mr.] Westuk's actions in trying to hail down motorists are precisely the sort of foreseeable events which gave rise to a duty on [Mr.] Fralick's part" to properly maintain his vehicle, to drive responsibly, and to "make sure that if his vehicle broke down despite his reasonable efforts to avoid such an event, he would nevertheless be prepared." *Id.* at 34–35.

For the reasons discussed above, we conclude that our analysis of Plaintiffs' claims for uninsured motorist coverage must be based on *Kastner*. And we do not agree with Plaintiffs that a foreseeability analysis applies to the second prong of *Kastner*. Instead, *Kastner* limits its discussion of foreseeability to the first prong of its test, asking whether the claimed injuries arose out of a use of a motor vehicle that was "foreseeably identifiable with the inherent purpose of a motor vehicle." 77 P.3d at 1263. *Kastner*'s discussion of the second prong makes no reference to foreseeability; rather, the second

17

prong asks "whether the 'use' is causally related to the claimant's injury." *Id.* And this "causal relationship" is "not assess[ed] . . . according to the realm of torts, but rather according to contract causation analysis."[5] *Id.* This analysis "require[es] not only a 'but for' connection between the 'use' of the vehicle and the claimant's injury, but also an unbroken causal chain between that use and the injury." *Id.* at 1264. Thus, the pertinent question under the second prong of *Kastner* is not whether the injury foreseeably flowed from the use of the uninsured vehicle, but whether the injury was "directly related or inextricably linked" to the use of the vehicle, with "no independent significant act or non-use of the vehicle" interrupting the causal chain between the use and the injury. *Id.*

Applying *Kastner*'s causation test here, we determine that one or more independent actions broke any causal chain between Mr. Fralick's use of the Subaru and Plaintiffs' injuries. *See Kastner*, 77 P.3d at 1263–64. Mr. Fralick's use of the Subaru set into motion the series of events that ultimately led to Plaintiffs' vehicle rolling over and injuring them, making it a "but for" cause of Plaintiffs' injuries. However, this series of events involved multiple independent significant acts and non-uses of the vehicle that

---

[5] Although *Kastner* did not define what it meant by "contract causation analysis," it supported this point with a citation to *Titan Construction Co. v. Nolf*, 515 P.2d 1123 (Colo. 1973). *See Kastner*, 77 P.3d at 1263–64. In *Nolf*, the Colorado Supreme Court held that Colorado courts assessing causation for insurance purposes "are not dealing with tort rules of proximate cause," but are instead "concerned with causation in the field of contracts." 515 P.2d at 1126. The court then held that this analysis is generally governed by principles of "but for" causation, "[s]ubject to the qualification" that the causation requirement cannot be satisfied if "there is a lack of relationship between the [vehicle] and the accident." *Id.* The court then stated: "We suppose that, at least until further cases are determined by the Court of Appeals and this court, or until some further demonstration is made to us, the sufficiency of the causative relationship must be made on an *ad hoc* basis." *Id.*

18

prevent us from concluding that Plaintiffs' injuries were "directly related or inextricably linked" to that use. *See id.* at 1264.

When the vehicle broke down, Mr. Fralick guided the Subaru into a place of safety from which it was not in danger of being hit by any vehicles or of obstructing the flow of travel on the interstate. Even assuming this action alone did not break the causal chain between Mr. Fralick's use of the Subaru and Plaintiffs' injuries, Mr. Westuk's independent choice to leave the Subaru and walk to the southbound lanes of the freeway, against Mr. Fralick's advice and without Mr. Fralick's knowledge, certainly did. Plaintiffs' injuries cannot be considered "directly related or inextricably linked" to Mr. Fralick's use of the Subaru when the causal chain between his use of the vehicle and their injuries was thus interrupted by this "independent significant act" by a third party. *See id.*

Moreover, the causal chain was further interrupted when some misunderstanding or mishap led to Mr. Westuk leaving the safety of the shoulder and ending up in the travel lane of the interstate in the dark. If Mr. Westuk had not fallen or walked onto the interstate, Plaintiffs' accident would not have occurred as it did, regardless of how negligent Mr. Fralick may or may not have been in his operation of the Subaru three hours before the accident or in his maintenance of the Subaru during the previous week. Accordingly, this independent significant action or mishap on Mr. Westuk's part severs any possible remaining causal connection between Mr. Fralick's use of the Subaru to drive northbound on Interstate 25 at 9:30 p.m. and Plaintiffs' accident three hours later in the southbound lanes. *See id.*

19

This conclusion is bolstered by Colorado courts' explanation of the purpose of uninsured motorist coverage under Colorado law. Colorado courts have repeatedly explained that "the legislative intent underlying the [Uninsured Motorist] Act [i]s the General Assembly's desire 'to provide compensation for injury caused by an uninsured motorist equal to that obtainable for injury caused by an insured motorist.'" *Id.* at 1260 (quoting *Nissen*, 851 P.2d at 168); *see also Roque*, 318 P.3d at 5–6 ("Colorado's uninsured motorist statute is intended only to 'compensate a person injured by an uninsured motorist to the same extent as one injured by a motorist who is insured in compliance with the law,' not to 'require full indemnification of losses suffered at the hands of uninsured motorists under all circumstances.'" (brackets omitted) (quoting *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 61 (Colo. 1990))). But Plaintiffs do not cite to a single case in which an insurance company was required to cover a claim brought against an insured motorist based on the independent actions of a former passenger, taken against the advice and without the knowledge of the insured motorist. And our review of the pertinent cases does not persuade us that, if Mr. Fralick had been insured at the time of the accident, his insurance company would have been required to compensate Plaintiffs for their injuries. *Cf. Zerfas v. AMCO Ins. Co.*, 873 N.W.2d 65, 70–71 (S.D. 2015) (holding that an insurance company was not required to provide uninsured motorist coverage for injuries caused when the insured vehicle swerved to avoid hitting a dead deer lying in the travel lane of the interstate, as requiring insurance coverage in such circumstances "would in essence impose strict liability upon

20

all drivers post-impact with wild animals and make them ensurers of the safety of all following travelers").

Although the accident in this case was tragic and unfortunate, "Colorado's uninsured motorist statute is intended only to 'compensate a person injured by an uninsured motorist to the same extent as one injured by a motorist who is insured in compliance with the law.'" *Roque*, 318 P.3d at 5 (brackets omitted) (quoting *Terranova*, 800 P.2d at 61). It is not intended "to 'require full indemnification of losses suffered at the hands of uninsured motorists under all circumstances.'" *Id.* at 5–6 (quoting *Terranova*, 800 P.2d at 61). *Kastner* defines the limits of State Farm's responsibility to cover Plaintiffs' losses, and because Plaintiffs fail to satisfy *Kastner*'s demanding causation standard, they are not entitled to coverage from State Farm here.

Finally, the parties agree that the resolution of all claims and counterclaims in this case depends on our resolution of the coverage question. Because we agree with the district court that Plaintiffs are not entitled to uninsured motorist coverage for the injuries caused by their rollover accident, we affirm the district court's entry of summary judgment in favor of State Farm on all claims and counterclaims.

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's summary judgment ruling.

Entered for the Court


Carolyn B. McHugh
Circuit Judge